Thomas GREENE, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., Defendant.

No. 3:98–CV–131–DF.

United States District Court, M.D. Georgia, Athens Division.

Sept. 11, 2000.

David R. Sweat, Christopher M. Blanchard, Athens, GA, for Thomas Greene, plaintiffs.

R. Steve Ensor, Alston & Bird, K. Nicole Clifton, Atlanta, GA, for United Parcel Service, Inc., defendants.

### ORDER

FITZPATRICK, District Judge.

The above styled action is presently before the Court on Defendant's motion for summary judgment (tab # 32).

## I. FACTS

United Parcel Service ("UPS") is engaged in the small package delivery business world-wide. In Georgia, there are multiple package centers, including the Athens Center, where packages are received, sorted, and loaded for delivery. The Athens Center is referred to as an "extended center" which means that it is a smaller facility than many other UPS centers in larger cities, both in physical size and in the volume of packages that are received, sorted, and shipped on a daily basis. The Athens Center employs approximately 160 full-time and part-time employees.

Plaintiff was hired as a part-time unloader at UPS's Athens, Georgia package center in January 1992. The position of unloader requires that the employee be able to continuously lift, lower, and carry packages weighing up to seventy pounds from large UPS feeder trucks. On average, Plaintiff was responsible for unloading two to three feeder trucks, or approximately 4,000 to 6,000 packages, per shift. In March or April 1992, Plaintiff began performing part-time cover driver work in addition to his regular job as an unloader. Plaintiff's work as a cover driver required that he be able to drive a commercial size vehicle and repeatedly lift, lower, and carry packages weighing up to seventy pounds. Plaintiff continued to work as an unloader and cover driver until December 1996. During this time, Plaintiff also performed other tasks, including scanning, sorting, and loading packages. The last day that Plaintiff worked at UPS was December 20, 1996.

On December 27, 1996, a MRI examination of Plaintiff's brain revealed an aneurysm of the right opthalmic artery. On January 6, 1997, a MRI examination of Plaintiff's cervical spine revealed a disc herniation at the C6–7 level with compression on the spinal cord at the C6–7 level. On January 8, 1997, Plaintiff underwent an aneurysm clipping. In the spring of 1997, Plaintiff began physical therapy, including daily walking, swimming, and using exercise machines, in connection with the herniated disc. On May 9, 1997, Plaintiff's physician released Plaintiff to work, imposing permanent restrictions of no lifting over twenty pounds, light duty work with frequent lifting of only ten pounds, and occasionally lifting up to twenty pounds.

On May 23, 1997, Plaintiff spoke with Connie Chandler, an occupational health manager at UPS, informing her about his medical releases and work status. After receiving medical information from Plaintiff's physician, Ms. Chandler and Plaintiff discussed whether Plaintiff could perform the essential functions of his cover driver and unloader jobs, and Plaintiff suggested other jobs that he could perform. Ms. Chandler then discussed Plaintiff's condition and accommodation requests with members of UPS's ADA Committee, which was comprised of a number of UPS managers involved in workplace accommodation matters. After reviewing Plaintiff's restrictions, requests, and the requirements of the various jobs at the Athens Center, the ADA Committee determined that Plaintiff's lifting limitations precluded him from performing the jobs he sought at the Athens facility.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. Proc. 56(c); *see also Edwards v. Shalala,* 64 F.3d 601, 603 (11th Cir. 1995). If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

In reviewing a motion for summary judgment, the court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *See Maynard v. Williams,* 72 F.3d 848, 851 (11th Cir.1996). Even if there exists some alleged factual dispute between the parties, summary judgment is not necessarily ˋ improper; there must be a genuine issue of *material* fact to render summary judgment improper. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

**B. *The Americans With Disabilities Act***

■ The Americans With Disabilities Act (ADA) provides that "[n]o covered entity shall discriminate against an individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, the plaintiff must establish that "(1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability."

Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir.2000).

The Court must first determine whether Plaintiff has a disability within the meaning of the ADA, which defines a "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(B) a record of such impairment; or

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2). Plaintiff does not argue that he satisfies the second prong. Plaintiff maintains that his physical impairments limit the major life activities of lifting and working, and that Defendant regarded him as being disabled. Defendant disputes that Plaintiff is disabled within the meaning of the ADA.

The EEOC regulations explain that the term "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i), (ii) (1999).[1] Factors that the court should consider in determining whether an individual is substantially limited in a major life activity include: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Major life activities are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29

---

1. Courts may rely upon the EEOC regulations for guidance. *See Gordon v. E.L. Hamm &* *Associates, Inc.,* 100 F.3d 907, 911 (11th Cir. 1996).

C.F.R. § 1630.2(i) (1999). In the Appendix to Part 1630, the EEOC indicated that "other major life activities include, but are not limited to, sitting, standing, lifting, and reaching."

■ For the purposes of its motion for summary judgment, Defendant does not dispute the existence of Plaintiff's physical impairments, which include a clipped aneurysm of the right ophthalmic artery, a herniated disc in his neck, and a disintegrating disc in his lower back. It is also undisputed that, as a result of the herniated disc, Plaintiff's physician permanently restricted him to no lifting over twenty pounds, occasional lifting of up to twenty pounds, and frequent lifting of up to ten pounds. Relying on *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir.1996), in which the Tenth Circuit held that lifting is a major life activity, and the Kansas District Court's decision in *Moroney v. United Parcel Service, Inc.*, 70 F.Supp.2d 1267 (D.Kan.1999), Plaintiff maintains that summary judgment should be denied Defendant. In *Moroney*, the district court concluded that the plaintiff produced sufficient evidence to survive summary judgment where he offered evidence that doctors placed restrictions on him against repetitively lifting more than thirty pounds, lifting more than fifty pounds, and repetitively bending, twisting, or lifting. 70 F.Supp.2d at 1271. The plaintiff in *Moroney* also offered evidence that he was unable to lift a full basket of laundry, bend over to pick up objects, or perform other daily activities. *Id.*

This case is distinguishable from *Moroney* because, unlike the plaintiff in *Moroney*, the lifting restrictions imposed by his physician are the only evidence that Plaintiff has produced in support of his argument that his physical impairments substantially limit the major life activity of lifting. Plaintiff has not presented evidence that he is unable to perform many everyday tasks, such as vacuuming, cleaning, carrying groceries or laundry baskets, and forms of exercise, that an average

person can perform easily. Although the Eleventh Circuit has not yet addressed the issue of a lifting restriction as constituting a disability, several other circuits have held that a lifting restriction alone does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity. *Compare Reed v. Heil Co.*, 206 F.3d 1055, 1061–62 (11th Cir.2000) (declining to determine whether lifting restriction fails as a matter of law to establish a disability within meaning of ADA), *with Marinelli v. City of Erie, Penn.*, 216 F.3d 354, 363–64 (3d Cir.2000) (holding ten-pound lifting restriction not substantially limiting); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539–40 (9th Cir.1997) (concluding that restriction from lifting more than fifty pounds twice per day and one hundred pounds once per day not substantially limiting); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (declaring, as a matter of law, that twenty-five pound lifting limitation "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996) (finding that inability to perform heavy lifting does not render a person substantially limited in the major activities of lifting and working); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (concluding that twenty-five pound lifting limitation not substantially limiting). Moreover, Plaintiff has produced no evidence comparing his own lifting capability to that of the average worker in order to meet his initial burden of proving that he has a substantial limitation in the major life activity of lifting.

■ With respect to the major life activity of working, the regulations explain that the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The

inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1999).[2] Factors that the Court may consider include the following:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii) (1999). Plaintiff has not produced evidence as to the geographical area to which he has access, or that he is restricted in performing a class of jobs or a broad range of jobs in various classes. In support of his claim, Plaintiff relies on a letter prepared for Plaintiff's counsel by Jack M. Sink, a vocational specialist who evaluated Plaintiff (Pl.'s Resp. to Def.'s Mot. for Summ. J. (tab # 38), Exhibit 1). According to the vocational specialist, a job profile based on Plaintiff's vocational aptitude, achievement levels, and physical restrictions indicates that Plaintiff "has access only to approximately fifteen percent of the jobs in the local labor market." The report does not identify the geographical area to which Plaintiff has access; the number and types of jobs utilizing similar training, knowledge, skills or abilities within that geographical area from which Plaintiff is disqualified because of the impairment; or the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area from which Plaintiff is disqualified because of the impairment.

Plaintiff asserts that the vocational specialist's conclusions are "bolstered by the fact that Greene applied unsuccessfully for work over 40 times after UPS refused to allow Greene to return to work." This assertion is based on a portion of the ALJ's findings of fact from a hearing on Plaintiff's workers' compensation claim (Pl.'s Resp. to Def.'s Mot. for Summ. J. (tab # 38), Exhibit 7). The ALJ noted that Plaintiff testified that "he has applied for work with over 40 employers and has left applications with approximately 30 employers. The Employee testified that he was physically unable to perform some jobs but left applications with others." Plaintiff has not presented evidence to this Court regarding the employers to which he applied, the types of positions for which he applied, or the skills and abilities required for those positions. The Record of Work Search form attached to Plaintiff's responses to Defendant's first interrogatories to Plaintiff (tab # 11) only lists eighteen of the over forty companies that Plaintiff contacted. According to Plaintiff's entries on the form, two of the companies indicated that Plaintiff should contact them again after the resolution of his

2. In *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court observed that "there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] … then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap."

119 S.Ct. at 2151 (internal citation omitted). The *Sutton* Court further noted that "even the EEOC has expressed a reluctance to … include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* '[i]f an individual is not substantially limited with respect to *any other* major life activity.'" *Id.* (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)) (emphasis in original).

workers' compensation claim, one company indicated that it would call Plaintiff back, Plaintiff left an application with one company, Plaintiff was not eligible for two positions, three companies did not have open positions, a company for which Plaintiff previously worked would not rehire him, and eight companies indicated that Plaintiff was not eligible based solely on weight requirements. This anecdotal evidence does not create an issue of fact as to whether Plaintiff is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

Plaintiff has not met his burden of producing evidence that addresses the factors listed in the regulations or that otherwise suggests that his impairments substantially limit his ability to work. Although Plaintiff is disqualified from jobs that require lifting over twenty pounds, he has not shown that he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

 Finally, Plaintiff submits that Defendant "regarded" him as disabled. "A person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484 (1999). Here, Plaintiff argues that his physical impairments are regarded as substantially limiting him in the major life activity of working, when in fact they do not. To support this claim, Plaintiff points to a letter written by James Millard, the UPS Workforce Planning Manager, to the EEOC Investigator for Plaintiff's charge. In this letter, Mr. Millard indicated that Plaintiff did not meet the essential functions of any job at the Athens facility and

that, if he tried to perform those jobs, "he would pose a direct threat to his personal health and safety" (Dep. of James Millard (tab # 43), Exhibit 20). This statement does not create a genuine issue of material fact as to whether Plaintiff is regarded as unable to perform a class of jobs utilizing his skills. When the letter is read in its entirety, this statement shows that Defendant considered Plaintiff to be unable to perform the requested jobs at the Athens facility because those jobs are performed in conjunction with the loader and preloader jobs, which Plaintiff is unable to perform due to his lifting restrictions. The letter does not indicate that Defendant regarded Plaintiff as unable to perform the smalls sorter, air recovery, shifter, and scanner jobs at other UPS facilities, or similar jobs utilizing similar skills at similar companies in the geographical area to which Plaintiff has access.

Additionally, Plaintiff contends that Defendant regarded him as disabled based on the following: (1) a UPS' operational report from the Athens Center which lists Plaintiff as "Off–Disability"; (2) UPS sent Plaintiff an unsolicited application for long-term disability benefits in 1998; and (3) UPS paid Plaintiff Temporary Total Disability Workers' Compensation benefits and continues to do so. With respect to the operational report, Plaintiff has laid no foundation for its admission into evidence. The report, which is dated January 2000, is titled "Daily Package Recap" (Pl.'s Resp. to Def.'s Mot. for Summ. J. (tab # 38), Exhibit 8). Plaintiff has introduced no evidence as to who prepared the report, the purpose of the report, or other explanation of what the designation of "Disability—Off Job" meant to the individual preparing the report or to Defendant. Without more, the designation on the operational report does not create a genuine issue of material fact as to whether Plaintiff is regarded as unable to perform a class of jobs utilizing his skills.

 With respect to the application form for disability benefits, Connie Chan-

dler testified that when an employee went out on disability in 1997, he would receive the form letter marked as Plaintiff's Exhibit 17 (Dep. of Connie Chandler (tab # 42), p. 43). The letter informs the employee about how to apply for disability benefits and the Family Medical Leave Act (Dep. of Connie Chandler (tab # 42), p. 43; Exhibit 17).[3] According to Ms. Chandler, the company providing the disability plan, not UPS, determined whether or not an employee would be entitled to disability benefits based on its own definition of "disability" (Dep. of Connie Chandler (tab # 42), p. 45). Plaintiff has introduced no evidence as to the type of determination UPS made regarding an individual's status as disabled prior to sending out this form letter. Moreover, Ms. Chandler testified that an employee could receive disability benefits if he worked at another job but was unable to perform his particular job at UPS (Dep. of Connie Chandler (tab # 42), p. 46). At most, this evidence shows that Defendant regarded Plaintiff as unable to perform a particular job, which is insufficient, as a matter of law, to prove that Defendant regarded Plaintiff as substantially limited in the major life activity of working.

■ Similarly, the payment of temporary total disability benefits pursuant to O.C.G.A. § 34–9–261 (Supp.2000) does not create a genuine issue of material fact as to whether Plaintiff is regarded as unable to perform a class of jobs utilizing his skills. Section 34–9–261 of the Georgia workers' compensation law provides that the employer must pay the employee a weekly benefit while the disability to work resulting from an injury is temporarily total. The word "disability" as used in the statute means "impairment of earning capacity." *Blue Bell Globe Mfg. Co. v. Baird*, 61 Ga.App. 298, 6 S.E.2d 83, 84 (1939). The Court notes that Defendant originally denied Plaintiff's claim for workers' compensation benefits (Pl.'s Resp. to Def.'s Mot. for Summ. J. (tab # 38), p. 3),

and only paid Plaintiff the claimed benefits after being ordered to do so by an ALJ following a hearing (Pl.'s Resp. to Def.'s Mot. for Summ. J. (tab # 38), Exhibit 7). Evidence that an ALJ ordered Defendant to pay Plaintiff disability benefits based on a finding that Plaintiff has an impaired earning capacity does not create a genuine issue of material fact as to whether Defendant mistakenly believes that Plaintiff's actual, nonlimiting impairment substantially limits one or more major life activities.

This case is distinguishable from *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1134 (11th Cir.), *modified*, 102 F.3d 1118 (1996), in which the Eleventh Circuit found that evidence that the defendant placed the plaintiff on paid disability leave and unpaid disability leave created a genuine issue of fact as to whether the plaintiff was regarded as disabled under the ADA. In *Pritchard*, the plaintiff was hired as an electrical engineer, working mostly on nuclear facilities. 92 F.3d at 1131. After being diagnosed with depression, which was exacerbated by the stress involved with working on nuclear projects, the plaintiff was transferred to a quality assurance department. *Id.* at 1132. As the plaintiff's new position also involved nuclear energy, the plaintiff tendered her resignation to her immediate supervisor, who refused to accept it. *Id.* Instead, the defendant placed the plaintiff on paid disability leave and then on unpaid disability leave. Thus, the defendant in *Pritchard* voluntarily placed the plaintiff on disability leave. Conversely, in this case, there is no evidence that Defendant voluntarily placed Plaintiff on disability leave.

### CONCLUSION

Plaintiff has not provided evidence from which a reasonable jury could find that he is substantially limited in the major life activities of lifting and working, or that Defendant regarded Plaintiff as disabled. Thus, Plaintiff has not met his burden of

---

3. Plaintiff did not apply for such benefits.

establishing that he is disabled within the meaning of the ADA. As a result, the Court need not consider Defendant's alternative argument that Plaintiff cannot establish that he is a qualified individual with a disability.

Accordingly, Defendant's motion for summary judgment is hereby **GRANTED.**