United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 1, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

—————————

m 02-30155

—————————

WILLIAM R. WALDRIP,

Plaintiff-Appellant,

VERSUS

GENERAL ELECTRIC COMPANY,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Western District of Louisiana

—————————————

Before GARWOOD, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

William Waldrip sued his former employer, the General Electric Company ("GE"), for a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court granted summary judgment to GE, concluding that Waldrip does not have a "disability" as defined by the ADA. Finding no error, we affirm.

## I.

Waldrip worked in various jobs at a GE manufacturing plant from 1973 to 1999. The plant contains heavy industrial machinery whose operators must remain alert. Beginning in 1984, his job required him to operate heavy machinery.

In 1996, Waldrip was diagnosed with chronic pancreatitis, which occasionally required him to miss a few days of work. He also began to take pain medication for his condition. These prescription drugs are central nervous system depressants and come with a warning not to operate heavy machinery while under their influence.

GE learned of Waldrip's medication in 1999 when Waldrip mentioned it to the company nurse. She asked him to bring his prescription bottles to work. The company doctor observed the warnings on the bottles and told Waldrip he could not work while under the influence of these medications; Waldrip claims company officials then fired him and removed him from the plant. According to GE, however, they told him he should switch pain medications or refrain from using the medication the evening before or during the workday. Waldrip did not return to work and sued for discriminatory discharge under the ADA, 42 U.S.C. § 12112(a).

## II.

"As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). The parties dispute whether Waldrip has a "disability," so we choose to address that question first. Because we conclude that Waldrip does not have a "disability" as defined by the ADA, we need not consider GE's other defenses.

## A.

The ADA defines "disability" as, "with respect to an individual[,] . . . a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(2)(A). There is a three-part test for applying this definition. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). We must determine first whether Waldrip has an "impairment," next whether the activity on which he relies is a "major life activity," and, if so, whether his impairment "substantially limits" that major life activity. *Id.*

"[T]hese terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). In enacting the ADA, Congress expressly estimated that "some 43,000,000 Americans have one or more physical or mental disabilities." 42 U.S.C. § 12101(a)(1). When one compares this estimate to the countless aches and pains from which most of us unhappily suffer, one can easily see that a lenient interpretation would expand the class of disabled persons far beyond Congress's expectation. *Toyota*, 534 U.S. at 197; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487 (1999). We therefore conduct a rigorous and carefully individualized inquiry into Waldrip's claimed disability to fulfill our "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

## 1.

Waldrip claims his chronic pancreatitis substantially limits his ability to eat and digest. Chronic pancreatitis is a "physical impairment," is often painful, and can cause bleeding,

pancreatic necrosis (tissue death), or even pancreatic cancer. In *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001), we treated chronic pancreatitis as an impairment. It also fits with the definition of "physical impairment" adopted by the Equal Employment Opportunity Commission ("EEOC"): "Any physiological . . . condition . . . affecting . . . digestive . . . and endocrine [systems]." 29 C.F.R. § 1630.2(h)(1).[1] GE more or less concedes this point by not arguing otherwise.

### 2.

We also agree that eating is a "major life activity." First, eating satisfies the Supreme Court's general standard for a "major life activity," namely, "those activities that are of central importance to daily life," *Toyota*, 534 U.S. at 197, and activities that "are central to the life process itself," *Bragdon*, 524 U.S. at 638. By any measure, eating is of central importance to daily life and the life process.

Second, eating is more important to life than are many of the activities previously recognized by the Supreme Court or this court as major life activities.[2] Third, three other circuits have recognized eating as a major life activity, and none has decided to the contrary.[3] Fourth, the EEOC's regulations recognize many less important activities, for example, performing manual tasks and speaking, as major life activities. 29 C.F.R. § 1630.2(i).

### 3.

Waldrip, however, offers no evidence that his chronic pancreatitis "substantially limits" the major life activity of eating. The substantial-limit requirement is the linchpin of § 12102(2)(A). Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking. For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity. *Albertson's*, 527 U.S. at 565 (contrasting "mere difference" with a "significant restriction"). The effects of an impairment must be severe to qualify as a disability under the ADA.[4]

---

[1] We cite the EEOC regulations as persuasive authority, not for *Chevron* deference. We early on stated, and often have repeated, that the regulations "provide significant guidance." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). Yet, we have never given the regulations *Chevron* deference, and recent decisions of the Supreme Court strongly suggest that the regulations are not entitled to such deference, because Congress delegated the authority to implement Title I of the ADA, which regulates employment, to the EEOC, 42 U.S.C. § 12116, but Title I does not include § 12102. *See Toyota*, 534 U.S. at 194; *Albertson's*, 527 U.S. at 563 n.10; *Sutton*, 527 U.S. at 478-80.

[2] *Bragdon*, 524 U.S. at 637-39 (reproduction); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999) (hearing); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (walking); *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997) (seeing).

[3] *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923-24 (7th Cir. 2001); *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 424 (8th Cir. 1999).

[4] *See Toyota*, 534 U.S. at 197 ("The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of [the major life activity of] manual tasks from qualifying as disabilities."); *id.* at 198 (holding that

(continued...)

"The particularized inquiry mandated by the ADA centers on substantial limitation of major life activities, not mere impairment." *Ivy*, 192 F.3d at 516. In *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997), for example, this court held that alcoholism is not a disability, despite its effects on walking, talking, thinking, and sleeping, because these effects, though serious, are merely temporary. "Permanency, not frequency, is the touchstone of a substantially limiting impairment." *Id.* at 316. Likewise, in *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187 (5th Cir. 1996), we held that cancer and its treatment did not substantially limit the major life activity of work. "Obviously, [plaintiff's] ability to work was affected; but . . . *far more is required* to trigger coverage under § 12102(2)(A)." *Id.* at 191 (emphasis added). Many other cases follow this lead and hold that the effects of an impairment, even some serious ones, do not rise to a *substantial* limit.[5]

---

(...continued)
"to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives"); *id.* at 196 ("'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'"); *Sutton*, 527 U.S. at 491 (same).

[5] *See, e.g., Blanks v. Southwestern Bell Communications, Inc.*, 310 F.3d 398, 401 (5th Cir. 2002) (holding HIV not a substantial limit on major life activity of reproduction); *Dupre v. Charter Behavioral Health Sys., Inc.*, 242 F.3d 610, 614 (5th Cir. 2001) (holding back injury not a substantial limit on major life activities of sitting, standing, or working); *Talk*, 165 F.3d at 1025 (holding deformed leg not a substantial limit on major life activities of walking or working); *Still*, 120 F.3d at 52 (holding monocular vision not a substantial limit on major life activity of working);
(continued...)

Moreover, a plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity. "[T]he ADA requires those 'claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.'" *Toyota*, 534 U.S. at 198 (quoting *Albertson's*, 527 U.S. at 567) (alterations omitted). A plaintiff cannot survive summary judgment by showing that an impairment like his own could substantially limit a major life activity of another person or in his own future. Rather, he must show that his impairment has actually and substantially limited the major life activity on which he relies.

For example, in *Bragdon*, 524 U.S. at 631, the Court held that the respondent's HIV substantially limited her major life activity of reproduction. In *Blanks*, by contrast, we held that the plaintiff's HIV did not substantially limit his major life activity of reproduction, because he had failed to allege any substantial limit and, to the contrary, admitted that his wife had been sterilized. *Blanks*, 310 F.3d at 401. In short, neither the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies.

---

(...continued)
*Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (holding asbestosis not a substantial limit on major life activity of breathing); *Dutcher*, 53 F.3d at 727 (holding permanent arm injury not a substantial limit on major life activity of working).

Waldrip does not begin to satisfy this exacting standard. He just asserts his conclusion that "pancreatitis is a serious condition that substantially limits his major life function of eating and digesting." Waldrip's doctor testified that, at most, he occasionally must miss a few days of work when his chronic pancreatitis flares up. This testimony does not demonstrate that Waldrip's chronic pancreatitis substantially limits his ability to eat; even if it did, such temporary effects do not amount to a substantial limit. *Burch*, 119 F.3d at 316. Based on this evidence, no reasonable jury could conclude that Waldrip's chronic pancreatitis "substantially limits" his ability to eat or, therefore, that he has a "disability" under § 12102(2)(A).

### B.

Even if a plaintiff does not have an "impairment that substantially limits one or more major life activities" as defined by § 12102(2)(A), he may claim the protection of the ADA if he is "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). A plaintiff has a "regarded as" disability if he (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment. *Gowesky v. Singing River Hosp. Sys.*, 2003 U.S. App. LEXIS 2054, *7-*8 (5th Cir. Feb. 6, 2003) (citing *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)); *see also Sutton*, 527 U.S. at 489. Waldrip must assert, if any, the first kind of "regarded as" disability, because GE's medical staff learned of his chronic pancreatitis years before they knew of his medication.

Waldrip has not satisfied his burden to create a genuine issue of material fact that GE misperceived his impairment as substantially limiting. *See Deas v. River West, L.P.*, 152 F.3d 471, 482 (5th Cir. 1998). To the contrary, he routinely took sick leave, without objection from GE, when his chronic pancreatitis became especially painful. GE became worried only once it learned that Waldrip was potentially taking central nervous system depressants while operating heavy machinery.

Waldrip argues finally that GE paid him disability benefits and therefore must have regarded him as disabled. Yet, GE paid those benefits only after Waldrip alleges he was fired. Thus, it could not have regarded him as disabled on this basis before allegedly firing him. Moreover, in his application for benefits, Waldrip denied being disabled.

The summary judgment is AFFIRMED.

5