**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 29, 2005**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-60785
Summary Calendar
_____

ED DILLON

        Plaintiff - Appellant

    v.

ROADWAY EXPRESS

        Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
No. 3:02-CV-1821-LN

_____

Before KING, Chief Judge, and DAVIS and STEWART, Circuit Judges.

PER CURIAM:[*]

    Ed Dillon, Plaintiff-Appellant, sued his former employer for

disability and racial discrimination.  The district court granted

summary judgment in favor of his employer.  We AFFIRM.

### I.  BACKGROUND

**A.   Factual Background**

    In the mid-1980s, Plaintiff-Appellant Ed Dillon, an African-

American male, began working for Defendant-Appellee Roadway

_____

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

- 1 -

Express, Inc. ("Roadway") as a dockworker at a Texas facility. In the mid-1990s, Dillon transferred to Roadway's facility in Brookhaven, Mississippi to work as a pickup and delivery driver. The Brookhaven facility is a satellite shipping terminal with three full-time drivers and one casual driver. Dillon's job involved receiving freight at the terminal, loading it onto a truck, and delivering it to customers.

On September 26, 1997, Dillon was assigned to truck number 10717. Dillon initially refused to drive the truck, complaining that exhaust fumes leaked into the truck's cab and made him sick. After arguing with his supervisor and attempting to contact a representative from his union, Dillon finally agreed to drive the truck. Dillon made a few deliveries, but soon began suffering from headaches and nausea. He proceeded to the emergency room at Hardy Wilson Hospital in Hazelhurst, Mississippi. After being examined and given medication, Dillon was discharged from the hospital. He then completed his deliveries and returned the truck to the Brookhaven terminal.

Due to medical problems he claims stem from being forced to drive truck number 10717, Dillon has been unable to work since September 26, 1997. Dillon was initially diagnosed as having carbon monoxide poisoning suffered as a result of the fumes leaking into the cab of truck number 10717. However, after extensive medical testing, Dillon's symptoms were diagnosed as having a psychological, rather than physical, origin. His

current diagnosis is post-traumatic stress disorder and environmental sensitivity syndrome due to work-related factors. Dillon claims his present symptoms include dizziness, irritability, loss of short-term memory, jitteriness, anxiety, temporary respiratory difficulties, auditory difficulties, hives, muscle weakness, and temporary paralysis. These symptoms allegedly are triggered by stress and exposure to various fumes including those from anti-freeze, diesel fuel, and overheated radiators. As a result of these symptoms, Dillon currently receives disability benefits from the United States Social Security Administration for his claimed permanent disability.

In October 1999, Dillon began consulting with Dr. Jule Miller, a psychologist, on a regular basis. By November 2000, Dr. Miller felt that Dillon's symptoms had improved sufficiently for him to attempt to return to work. On November 20, 2000, Dr. Miller wrote a letter clearing Dillon to return to work subject to two restrictions. The first restriction was that Dillon should be allowed to "leave work if his stress level gets too high, only to return when he feels it is manageable again." The second restriction was that Dillon "continue to make his appointments with me, even if that means having to miss some work."

Roadway sought from Dr. Miller clarification regarding his proposed accommodations. On January 22, 2001, Dr. Miller sent a second letter in which he stated that Dillon:

- 3 -

is not totally cured and will need some accommodations to be made. Particularly, there may be times when the stress level becomes too much for him and he will need to walk off the job for a time. This is most likely to happen during a conflict with management or from over-exposure to exhaust fumes. . . . He should only drive equiptment [sic] that fully meets Department Of Transportation regulations, particularly in regard to exhaust fumes.

On February 15, 2001, Roadway informed Dillon that Dr. Miller's letters represented an unacceptable return to work release. On March 12, 2001, Dr. Miller wrote a third letter in which he stated:

If Mr. Dillon is stressed too much, it is dangerous for his health and he needs to leave to prevent further psychological damage. He may only have to leave for an hour. . . . Or he may have to take the whole day off. . . . To not allow him to do this is to not provide reasonable accommodation to someone with a medical disability, which, as you know, is illegal.

On March 16, 2001, Roadway sent a letter to Dillon informing him that Dr. Miller's proposed accommodations were not reasonable. In closing, the letter informed Dillon that he should get in contact with the company if he had "any other suggestions of how to facilitate a return . . . ."

B.   Procedural Background

On September 10, 2001, Dillon filed a complaint with the United States Equal Employment Opportunity Commission. Dillon received his right to sue letter on September 26, 2002. On

- 4 -

December 26, 2002, Dillon filed suit in the United States District Court for the Southern District of Mississippi. Dillon raised three claims in his complaint, two of which are relevant here.[1] First, he alleged that in failing to grant him the accommodations outlined in Dr. Miller's letters, Roadway violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (2000). Second, Dillon alleged that Roadway's failure to grant him the requested accommodations was motivated by racial animus in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (2000).

On February 17, 2004, Roadway filed a motion for summary judgment. On August 2, 2004, the district court granted Roadway's summary judgment motion. The district court found that Dillon was not disabled within the meaning of the ADA. Further, the court found that even if Dillon were disabled, he is not otherwise qualified to return to work because Dr. Miller's accommodations were unreasonable. Finally, as to the Title VII claim, the court found that the record contained no evidence to support Dillon's claims of racial discrimination.

Dillon now appeals the district court's grant of summary judgment.

## II. STANDARD OF REVIEW

---

[1] Dillon also raised a state law retaliation claim, which the court found was not cognizable under Mississippi law. Dillon does not appeal this determination.

- 5 -

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant. Celotex, 477 U.S. at 324. Upon showing that there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the non-movant to establish that there is a genuine issue of material fact in dispute. Id.

**III. ANALYSIS**

**A. Dillon's ADA Claim**

To establish a prima facie case for discrimination under the ADA, Dillon must prove that: (1) he is disabled; (2) with reasonable accommodations, he is qualified for the position; and (3) he suffered an adverse employment decision based on his disability. Still v. Freeport-McMoran, Inc., 120 F.3d 50, 51-52 (5th Cir. 1997) (per curiam). The ADA defines a disability as a "a physical or mental impairment that substantially limits one or more of the major life activities . . . ." 42 U.S.C. § 12102 (2)(A) (2000). The phrase "major life activities" includes "functions such as caring for oneself, performing manual tasks,

- 6 -

walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i) (2004). On appeal, Dillon contends that the district court erred in ignoring evidence that his mental impairment substantially limits his ability to perform the major life activities of breathing, hearing, and walking.

We find Dillon's arguments regarding the district court's supposed errors unavailing. As for his claim that he has difficulty breathing, Dillon argues that the record is replete with evidence showing that his symptoms are brought on, in part, by inhaling fumes. Dillon reasons that because the act of inhalation is a necessary part of breathing, he is substantially limited in his ability to breathe. This evidence does nothing whatsoever to indicate that Dillon is hampered in his ability to breathe. Rather, all it shows is that the act of breathing is a trigger for other alleged impairments. The record also lacks evidence showing that Dillon is substantially limited in his ability to hear. The only symptom he complains of is an occasional inability to localize a sound, i.e., ascertain the direction from where the sound is coming. He does not contend that he suffers from any actual hearing loss. Thus, there is no substantial limitation on his ability to hear. Finally, the record also does not reflect that Dillon is substantially limited in his ability to walk. Dillon claims that the inhalation of fumes sometimes triggers muscle weakness. At times, the weakness is so severe that Dillon finds it difficult to walk. Thus,

Dillon argues, he suffers from temporary paralysis.  This "paralysis" does not qualify as a disability because it is merely the most extreme manifestation of an only occasional symptom.  We agree with the district court's view that such an occasionally occurring problem does not qualify as a substantial limitation. See Waldrip v. Gen. Elec. Co., 325 F.3d 652, 656-57 (5th Cir. 2003) (holding that occasional flare-ups of plaintiff's chronic pancreatitis which required him to miss work did not qualify as a disability);  Burch v. Coca-Cola Co., 119 F.3d 305, 316 (5th Cir. 1997) ("We have previously rejected attempts to transform temporary afflictions into qualifying disabilities.").

Because Dillon is not disabled, we need not consider whether Roadway failed to reasonably accommodate him.  See Blanks v. Southwestern Bell Communications, Inc., 310 F.3d 398, 402 (5th Cir. 2002) ("We conclude that Blanks is not entitled to ADA protection, hence, we need not decide whether [Southwestern Bell] failed to reasonably accommodate him . . . .").

## B.   Dillon's Title VII Race Discrimination Claim

To state a prima facie case for discrimination under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) others similarly situated were more favorably treated or that he was replaced by someone outside the protected class.  See, e.g., Okoye v. Univ.

of Tex. Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).
The record is devoid of any evidence as to the fourth element of
the prima facie case.  There is simply no evidence to suggest
that similarly situated white employees were treated any
differently.  Dillon has also not pointed to any evidence
indicating who has been selected to take over his old job.  In
the end, there is simply nothing to suggest that Roadway's
refusal to allow Dillon to return to work derives from anything
other than his inability to do his job with reasonable
accommodations.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district
court is AFFIRMED.