**DISSENT and Opinion Filed April 5, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00379-CV**

**DALLAS COUNTY HOSPITAL DISTRICT D/B/A PARKLAND HEALTH AND HOSPITAL SYSTEM, Appellant**
**V.**
**SHERI KOWALSKI, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-03723-E**

## DISSENT

Before Justices Smith, Miskel, and Kennedy
Dissenting Opinion by Justice Miskel

The majority has described the relevant background facts and law well. However, I respectfully disagree with their analysis. I believe the plaintiff failed to meet her burden on at least one element of her prima facie case for the disability discrimination claim and the retaliation claim. I would therefore have concluded that she failed to establish a waiver of governmental immunity and that Parkland's plea to the jurisdiction should be granted. Because the majority holds otherwise, I respectfully dissent.

1

## I. Disability Discrimination: Plaintiff Did Not Offer More than a Scintilla of Evidence Proving that She Had a Disability

The majority opinion concluded that Kowalski created a fact issue on whether she had a disability and whether Parkland regarded her as disabled. *See* TEX. LAB. CODE § 21.002(6). For two reasons, I disagree with majority's conclusion that she had a disability or whether Parkland regarded her as disabled.

### A. Kowalski Insisted She Was Not Disabled

Before the alleged adverse action occurred, Kowalski never told Parkland that she was disabled, and she admits that she did not consider herself to be disabled. She agrees that she did not make an ADA complaint and that she never used the word "discrimination." Her brief points out that she emailed her supervisor Ms. Putz, "complaining that she is being treated as disabled when she is not." She provided Parkland with a form from her chiropractor who represented that the provider had examined Kowalski and was familiar with her medical history. The provider certified that Kowalski had no physical impairment recognized under the ADA and stated multiple times that "limitations on major life activities" was not applicable to Kowalski. Kowalski's provider only stated that an ergonomic/equipment accommodation would assist Kowalski and allow her to work more comfortably. When the claims administrator's HIPAA authorization form asked Kowalski to list the reasons for her disclosure of protected health information, she did not check the box for "In connection with a request for an absence from work

2

or accommodation from work." Instead, she hand-wrote "To comply with employer's request for ergonomic evaluation" and marked that option. At the time, Kowalski repeatedly stated that she did not believe that a disability existed or that the evaluation process was happening because she was actually disabled. She resisted any inference by Parkland that she was disabled, and consistently complained about an overly bureaucratic evaluation process.

Kowalski has still not provided evidence that she had a mental or physical impairment that substantially limited at least one major life activity. In *Waldrip v. General Electric Co.*, the Fifth Circuit held that:

> The substantial-limit requirement is the linchpin of [the definition of disability in the ADA]. Without it, the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, or walking. For this reason, an impairment must not just limit or affect, but must *substantially* limit a major life activity. The effects of an impairment must be severe to qualify as a disability…

325 F.3d 652, 655 (5th Cir. 2003) (internal citations omitted). Kowalski has now provided a declaration with conclusory statements that she had conditions that limited major life activities, but she does not include facts showing that her impairment had actually and substantially limited the major life activity on which she relied. *See id*. at 656. Her declaration, for example, stated that she "almost" could not drive to work. She has not demonstrated that she actually experienced a severe impairment or *substantial* limit on a major life activity. The *Waldrip* court

3

also affirmed summary judgment on regarded-as disability, emphasizing that, "in his application for benefits, [the employee] denied being disabled." *Id*. at 657.

Similarly, in *Burns v. Snow*, the Tenth Circuit upheld summary judgment on disability because the employee's "self-serving, contradictory" remarks to her fellow employees about her condition were insufficient to create a fact issue, "especially when considered together with: 1) her statement on the Self–Identification of Handicap form that she had no disability; 2) an entry on her physical examination form in which she indicated she no longer suffered from lupus;" and other evidence that cut against regarded-as disability. 130 Fed. App'x 973, 982 (10th Cir. 2005). In the instant case, Kowalski has also provided a self-serving declaration that contradicts all of her contemporaneous statements and is equally insufficient to create a fact issue.

Her insistence that she was not disabled also undermines a regarded-as disability claim. For example, in *Longway v. Myers Industries, Inc.*, the Second Circuit affirmed summary judgment on regarded-as disability where the employee never "characterized his condition as anything other than a one-time injury" and instead "informed his supervisor that he was being released from the hospital with 'no restrictions physically' and could return to work the following day, . . . and [the employee] never completed the short-term disability form that his supervisor sent him." 812 Fed. App'x 57, 59 (2d Cir. 2020). Many district court cases are to the

4

same effect. *See, e.g.*, *Rafferty v. Keypoint Gov't Sols., Inc.*, No. 4:16-CV-00210-DCN, 2020 WL 7038952, at *23 (D. Idaho Nov. 30, 2020); *Roebuck v. Am. Axle & Mfg., Inc.*, No. 1:11-CV-1048, 2012 WL 6151988, at *4 (W.D. Mich. Dec. 11, 2012); *Dismore v. Seaford Sch. Dist.*, 532 F. Supp. 2d 656, 664–65 (D. Del. 2008); *Wheelock v. Philip Morris, USA*, No. CIV. A. 95-0999, 1997 WL 45292, at *7 (E.D. La. Feb. 5, 1997).

Kowalski and her healthcare provider denied any disability, and, on these facts, Parkland should have been entitled to take them at their word. Her later conclusory declaration that she had a physical impairment that limited major life activities is inconsistent with all of the information she provided to Parkland before the employment decision was made and would not therefore have been able to form a basis for it. From Kowalski's perspective and from Parkland's perspective, no scintilla of evidence of disability existed when the employment decision was made.

## B. Investigating Whether Kowalski Had a Disability Does not Prove that Parkland Already Regarded Her as Disabled

The linchpin of Kowalski's argument for regarded-as disability was that when Parkland and its claims administrator processed her request for a keyboard tray using disability-accommodation forms and language, Parkland revealed that it viewed her as disabled. However, Kowalski agrees that Parkland treated her request of the keyboard tray as a "workspace request" for accommodation, and that the appropriate process at Parkland for all employees requesting a keyboard tray was to go through

5

the ADA accommodation process. Kowalski does not contest that the policy existed, although she complains that not every employee was subjected to the full process.

The majority concludes that Parkland regarded her as disabled almost solely because Parkland internally used terms like "accommodation" and "disability" to process Kowalski's request for a keyboard tray. Parkland does seem to have an onerous and bureaucratic process to evaluate whether workspace requests need to be accommodated. But the fact that Parkland's procedures route requests of this type through a formal "accommodation" evaluation process is not evidence that it already regarded each requestor as being disabled.

Federal cases have recognized as much. They have held that simply processing employee workplace issues in a sensitive fashion, such as by using a form labeled "disability accommodation" to process a request for work adjustments, does not show the employer regarded the employee as disabled, particularly when the employer's policy is to send the form to wide swathes of their workforce without regard to an employee's unique circumstances. Thus, when one employer "routinely" sent disability forms "to any employee who had been on short-term disability for three months," this did not suggest anything about the employer's view of the plaintiff. *See Graham v. Boehringer Ingelheim Pharm., Inc.*, 451 F. Supp. 2d 360, 373 (D. Conn. 2006). Even actually placing an employee on short-term disability does not demonstrate that the employer regarded the employee as disabled.

6

*Id.* In another case, an employer's broad use of a form that mentioned disability was held to be "no evidence" that the employer "perceived *her* [the employee] as impaired." *Vaughan v. World Changers Church Int'l, Inc.*, No. 1:13-CV-0746-AT, 2014 WL 4978439, at *11 (N.D. Ga. Sept. 16, 2014). And in still another case, where the employer sent a form letter and an application for disability benefits to any employee who went out on disability leave, this was no evidence that the employer regarded the employee as legally disabled, especially when the criteria for disability were the employer's own and not those of the ADA. *Greene v. United Parcel Serv., Inc.*, 125 F. Supp. 2d 517, 523–24 (M.D. Ga. 2000). In this case, it is undisputed that Kowalski never signaled the severity of her condition by going on disability leave. Instead, she only requested a minor adjustment to her work environment—a keyboard tray—and in response, Parkland followed its generally applicable policies. This is not a case where the employer stereotyped its employee, seeing her primarily as her disability or regarding her through the lens of her medical condition. *Cf. Ross v. Campbell Soup Co.*, 237 F.3d 701, 707 (6th Cir. 2001).

Parkland's adherence to its accommodation evaluation policy does not prove that it regarded everyone who made such a request as disabled. It puts the cart before the horse to conclude that, by having a process to evaluate *whether* an employee is disabled, the employer has already formed a belief that the employee is disabled—especially where the employee repeatedly insisted she was not disabled.

For all these reasons, I would conclude that Kowalski has not established a waiver of immunity for her discrimination claim, because she failed to make a prima facie case that includes more than a scintilla of evidence on the existence of a disability.

## II.  Retaliation: Plaintiff Did Not Offer More than a Scintilla of Evidence Proving that She Engaged in Protected Activity

I agree with the majority that there is no evidence that Kowalski made or filed a charge, or that she testified, assisted, or participated in an investigation, proceeding, or hearing.  However, I believe she also failed to show the existence of a fact issue on whether she opposed a discriminatory practice or filed a complaint. *See* TEX. LAB. CODE § 21.055.

Kowalski consistently told Parkland she was not disabled, she was not requesting an ADA accommodation, and she was frustrated at having to go through what she perceived as an unnecessary disability accommodation process.  Kowalski has agreed that "I don't believe I ever used the word discrimination."  Parkland could not have been alerted that Kowalski was filing a complaint or opposing a practice of disability discrimination when she expressly told them that she was doing neither. *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 60 (Tex. 2021).

For Kowalski's retaliation claim, the majority focuses on the January 2018 emails where she complained to her supervisor Ms. Putz that she was treated differently than Ms. Evans, another employee who had recently requested a

keyboard tray. The crux of Kowalski's protest was that Evans, who suffered from "the same exact neck pain" according to Kowalski, received a keyboard tray without going through the same bureaucratic hurdles. Kowalski's brief cites cases where discrimination can be shown by an employer's departure from its policies. But here, Kowalski is complaining that Parkland took her complaint too seriously and too-closely adhered to its own policies. The evidence does not show that Kowalski reasonably believed that the differences in Parkland's handling of her case were motivated by disability discrimination.

The majority notes that, to qualify as a complaint about or opposition to disability discrimination under these circumstances, the complaint must concern differential treatment that was motivated by Parkland regarding her as disabled. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 787 (Tex. 2018) (discussing gender-motivated discrimination). The underlying discrimination claim need not be substantiated to protect an employee against retaliation, but the employee must reasonably believe in good faith that the conduct complained of was discriminatory. *Tex. Tech Univ. Health Scis. Ctr.—El Paso v. Flores*, 657 S.W.3d 502, 510–11 (Tex. App.—El Paso 2022, pet. filed) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000), and *Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.24 (5th Cir. 2000)). Kowalski admits, as she must, that her complaint was based on Parkland's treatment of a person with "the same exact"

9

condition and the same request for a keyboard tray, who was dealt with fairly, accommodated, and faced no negative treatment. Kowalski's complaint to Putz was not that she was treated differently from people *without disabilities*—an allegation from which a belief of disability discrimination might reasonably follow. Rather, she complains that she and Evans had the same perceived disability and received different treatment. This fails to show how the different treatment was motivated by discrimination regarding the possible disability that both Kowalski and Evans shared.

Kowalski has expressed a variety of other complaints about her supervisor Putz, including Putz's lack of competence and Putz's poor treatment of Kowalski in other contexts. But, for example, complaining only of harassment or bullying is not enough. *Alamo Heights*, 544 S.W.3d at 786–87 (Tex. 2018). There must be evidence of anti-disability motivation. *See id*. Kowalski has not produced evidence to show that Parkland became motivated by disability discrimination in only her own case, when it welcomed an identical request just months earlier.

The majority opinion concludes that Kowalski's January 2018 emails provide more than a scintilla of evidence that Kowalski engaged in a protected activity. To qualify as a protected activity and invoke the protections of Section 21.055, the conduct relied on by the employee must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue. *Lara*, 625

10

S.W.3d at 59; *see also Democratic Sch. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 312 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017). Kowalski's emails did not alert Parkland that unlawful discrimination was at issue. Further, the evidence shows that Kowalski did not believe, and could not have reasonably believed, that disability discrimination was at issue. *See also McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 763 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (affirming summary judgment on retaliation because "no reasonable person would believe" that the conduct complained of violated the TCHRA); *DeFrancesco v. Mem'l Villages Police Dep't*, No. 01-17-00660-CV, 2019 WL 1388006, at *9 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op.) (same).

Kowalski's emails expressly stated that she "did not file an ADA complaint," that she "just need[s] an ergonomic evaluation," and "[a]ll I want to try is a keyboard tray." Kowalski's brief characterizes these emails to Putz as "alerting Parkland that she did not want to be treated as having made an accommodation complaint." Yet Kowalski also maintains the opposite, now contending that she had a disability and that these communications to Putz formed a disability discrimination complaint. Effectively, Kowalski is arguing that the beliefs she herself expressed to Parkland in January 2018 were unreasonable, and that she should be given credit for making a complaint that she expressly disclaimed making within the supposed complaint

11

itself. The Fourteenth Court of Appeals held that an internal complaint did not constitute protected activity in light of a similar set of contradictions as those we face here:

> Nothing in Akorede's internal complaint even hints that she believed she was being discriminated against based on any protected trait, and the Commission adduced uncontradicted evidence that Akorede *disclaimed any discrimination* based on a protected class. Accordingly, Akorede has not raised a genuine issue of material fact regarding the internal complaint—it was not a protected activity for purposes of the retaliation claim.

*Akorede v. Tex. Workforce Comm'n*, No. 14-18-00827-CV, 2020 WL 1778194, at *3 (Tex. App.—Houston [14th Dist.] Apr. 7, 2020, no pet.) (mem. op.) (emphasis added). I agree with this holding and would apply it here. If, as the majority notes, "complaining only of . . . 'discrimination,' . . . is not enough" to constitute protected activity, surely we must acknowledge the fact that Kowalski expressly stated she was not even complaining of discrimination. In the absence of evidence to "link[]" her complaints "with any allegation" of discriminatory conduct motivated by disability, I would hold that Kowalski's retaliation claim falls short for want of protected activity. *See Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 714 (Tex. App.—El Paso 2015, no pet.).

### III. Conclusion

I commend the majority for its thoughtful handling of this case, but I differ with my colleagues in that I see no evidence of disability, regarded-as disability, or

protected activity.  Those gaps in the record preclude Kowalski from overcoming Parkland's immunity and are enough to dispose of all her claims.  Because I conclude that the trial court erred in denying Parkland's plea to the jurisdiction, I would vacate the orders in question and dismiss the case with prejudice.  *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

/Emily Miskel/
EMILY MISKEL
JUSTICE

210379DF.P05