# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 22, 2010

Lyle W. Cayce
Clerk

No. 08-51175

EDWARD CARMONA

Plaintiff-Appellant

v.

SOUTHWEST AIRLINES COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant, Edward Carmona, sued defendant-appellee, Southwest Airlines Co. (Southwest), claiming that the termination of his employment violated Title VII of the Civil Rights Act of 1964 (Title VII) and the Americans with Disabilities Act (ADA). The case was tried before a jury, which found that Southwest had discriminated against Carmona because of his disability and awarded him $80,000.00 in lost wages. The jury found no liability on Carmona's Title VII claim. The district court accepted the jury's verdict on Carmona's Title VII claim, vacated the jury's verdict on Carmona's ADA claim, and granted judgment as a matter of law to Southwest. Carmona

now appeals.  For the following reasons, we reverse in part, vacate in part, and remand.

## FACTS AND PROCEEDINGS BELOW

Carmona was diagnosed with psoriasis when he was twelve or thirteen years old.  Psoriasis is a skin disease characterized by thickened patches of inflamed, red skin, often covered by silvery scales.  American Medical Association, *Encyclopedia of Medicine* 830 (Charles B. Clayman ed., Random House 1989).  Although individual attacks of psoriasis can be completely relieved, the disease itself is not usually curable, and it tends to recur in attacks of varying severity.  *Id.*  Carmona began working as a flight attendant at Southwest in 1991.

In 1998, Carmona was diagnosed with psoriatic arthritis, which is a condition that develops in about thirty-five percent of people who have psoriasis.  Psoriatic arthritis causes painful swelling and stiffness in the joints during attacks of psoriasis on the surface of the skin.  During flare-ups of his psoriatic arthritis, Carmona cannot walk or move around without great pain.  It also makes it harder for him to sleep.  Carmona's psoriatic arthritis flares up three or four times every month, and each flare-up lasts for three or four days.  In other words, Carmona spends anywhere from about one-third to about one-half of each month unable to move without a great deal of pain.  He filed for intermittent Family and Medical Leave Act (FMLA) leave so that he could be excused from work during these flare-ups.  Southwest's third-party FMLA administrator, Broadspire Administrator Services, Inc. (Broadspire), granted this leave in 1998.  Broadspire renewed the leave periodically until April 2005, when it found that Carmona had not worked enough hours to be eligible for renewal.

Southwest's attendance policy is governed by the "Agreement Between Southwest Airlines Co. and The Flight Attendants in the Service of Southwest Airlines Co. As Represented By the Transport Workers Union of America, AFL-CIO" (Agreement).  Under the Agreement, flight attendants accrue points for various types of attendance lapses, such as calling in sick, failing to show up for a flight without advance notice, or failing to report to scheduling.  Different types of lapses result in the accrual of different numbers of points.  For example, calling in sick without a doctor's note results in the addition of a half-point to the flight attendant's record, while a failure to show up without any kind of prior notice to the airline results in the addition of two-and-a-half points.

Points do not remain on the flight attendant's record permanently.  All points that are more than sixteen months old are automatically "rolled off."  If a flight attendant does not accrue any points during a calendar quarter, his running total is reduced by two.  Both of these reductions are known as "record improvement."  Points are not assigned for absences that result from approved FMLA leave.  Also, a flight attendant may use a doctor's note once every calendar quarter to remove all points associated with the ailment that is verified by the note.  The flight attendants' records are kept in pencil, because they are frequently altered by doctors' notes, FMLA leave, and pre-termination reviews.

When a flight attendant reaches between five and six-and-a-half points, he is issued a "letter of counsel."  When the flight attendant reaches between seven and nine points, he is issued a "written warning."  When the flight attendant reaches between nine-and-a-half and eleven-and-a-half points, he is issued a "final warning."  Termination occurs when a flight attendant reaches or exceeds twelve points.  However, termination cannot occur under

3

the terms of the Agreement if the flight attendant was not timely served with the letter of counsel, the written warning, and the final warning. Additionally, before termination is finalized, Southwest reviews and recalculates the points to verify that the flight attendant has reached at least twelve points. Southwest then issues a termination level notification and holds a fact-finding meeting to discuss the situation with the flight attendant and a representative of the flight attendant's union. After these precautionary steps, if Southwest remains convinced that the flight attendant has accrued twelve or more points, then the flight attendant is issued a termination letter, and his employment is terminated.

Carmona used a doctor's note to cover three absences resulting from a flare-up of his psoriatic arthritis in late April 2005. He contends that he tried to excuse these absences using his FMLA leave but was not permitted to do so by Southwest on the ground that he was not eligible for leave. Southwest's manager contends that Carmona was eligible to excuse two of the three absences with his FMLA leave but chose to use a doctor's note instead.

On April 30, 2005, Carmona's FMLA leave expired. He was unable to renew it, because, according to Southwest and Broadspire, he had not worked enough hours that year to be eligible to renew it. Accordingly, after May 1, 2005, he was no longer able to excuse absences caused by his psoriatic arthritis with FMLA leave. At the end of April, Southwest appears to have believed that he had either six-and-a-half or seven points on his record.

Southwest sent Carmona three letters of counsel on April 7, April 26, and May 4, 2005. In early May, a flare-up of his psoriatic arthritis caused him to miss several days of work. These absences were not excused, because Carmona had been unable to renew his FMLA leave and had already used his doctor's note for the second quarter of 2005 in April. On May 10, 2005,

Southwest sent Carmona a written warning.

On June 21, 2005, Carmona sprained his thumb at home. He did not report to work the next day as scheduled, but went to the hospital instead to have his thumb examined. The hospital released him around midnight of June 23. However, he did not return to work until June 27, because of the swelling in his hand. At trial, it was disputed whether or not this absence was in accordance with the hospital's instructions. Carmona testified that he faxed two doctors' notes to Southwest, one of which said that he should return to work the morning of June 23, and the other of which said that he would need to stay home for three or four days. Southwest contended that it had only received the note saying he could return to work the morning of June 23.

On June 23, 2005, Southwest sent Carmona his final warning. It issued him a termination level notice on June 27, which indicated that he had accumulated thirteen points as of June 26. Under the Agreement between the flight attendants' union and Southwest, a flight attendant must be terminated within seven days of reaching twelve points. Kevin Clark (Clark), Southwest's In-Flight Base Manager for Houston, requested an extension of this deadline, because he was unable to find a time within seven days of June 26 when he, Carmona, and a representative from Carmona's union could meet to hold the fact-finding meeting to which Carmona was entitled. At trial, Carmona testified that his union representative told him that he had to grant Southwest the extension or it would terminate him immediately. He decided to grant the extension.

Before the fact-finding meeting, Clark reviewed Carmona's attendance points and concluded that Carmona's record was incorrect, because Clark calculated that it should have reflected sixteen-and-a-half points, instead of thirteen. At the meeting, Clark asserted this view. Stacy Martin (Martin),

Carmona's union representative, calculated Carmona's total to be fourteen points. Because the representative of the union and Southwest's manager both agreed that Carmona was in excess of twelve points, he was terminated for excessive absenteeism without further procedure. Carmona testified at trial that, after the meeting, when Martin learned more about the circumstances of Carmona's absences, Martin stated that he did not believe that Clark had told the entire truth during the meeting. Carmona attempted to bring grievance proceedings through his union, but the union determined that his grievance lacked merit. He then obtained counsel and appealed his grievance to the Railway Labor Act (RLA) Board of Adjustment (Board), but the Board upheld his termination.

After his termination, Carmona worked as a customer service agent for Jet Blue airlines on a part-time basis, which did not exceed twelve hours per week. This job required him to stand behind a desk and check in passengers, meet flights on the jet way, and check baggage. After nine months, he left Jet Blue and began working at Dillard's. This job required him to sit behind a desk all day, which aggravated his condition. However, Carmona admitted at trial that he did not miss work at either Jet Blue or Dillard's as a result of his psoriatic arthritis.

Carmona filed suit against Southwest on August 14, 2006, claiming that his termination violated the gender discrimination provisions of Title VII, the disability discrimination provisions of the ADA, and the FMLA. He dropped his FMLA claim during the course of the proceedings. On May 25, 2007, Southwest filed a motion for summary judgment, arguing, among other things, that Carmona's claims were preempted by the RLA. The district court agreed that Carmona's claims were preempted by the RLA and granted Southwest's motion. Carmona appealed the grant of summary judgment to

this court, which reversed and remanded on July 16, 2008. *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008).

On August 7, 2008, the district court set the case for jury trial in October 2008. On September 3, the district court held a hearing on the remainder of Southwest's motion for summary judgment and denied the motion. At this hearing, Carmona stated that he was ready to proceed to trial immediately and declined the district court's invitation to engage in additional discovery. On September 25, 2008, the court reset the trial to begin on September 29, 2008. The district court stated that this would be necessary, because its docket was completely full in October and November. On September 28, Carmona filed a motion to compel Southwest to produce Rita Ilgen (Ilgen), one of its employees, as a witness, or, alternatively, a motion for a continuance pending Ilgen's return from her vacation outside of subpoena range. Carmona stated that Ilgen was important to his gender discrimination claim, because Clark, the same supervisor who had terminated Carmona, had not assigned her points when she was arrested for driving under the influence. The district court denied this motion on September 29, stating that it had no room on its docket to delay the trial. The trial began as scheduled on September 29.

Southwest moved for judgment as a matter of law at the conclusion of each party's case, arguing, *inter alia*, that Carmona had failed to produce sufficient evidence for a reasonable jury to find that he was an "individual with a disability" within the meaning of the ADA, that he was "qualified" to work as a flight attendant within the meaning of the ADA, or that he had been discriminated against "because of" his disability. *See* 42 U.S.C.A. §§

7

12102,[1] 12112[2] (2005). The trial court carried Southwest's motion pending submission of the case to the jury. On October 2, 2008, the jury returned a verdict finding for Carmona on his ADA claim and awarding him $80,000 in lost back wages, but finding against him on his Title VII claim. Following the verdict, Southwest renewed its motion for judgment as a matter of law, and Carmona moved for reinstatement. The district court granted Southwest's motion on October 20, accepting the jury's verdict as to Title VII, vacating the verdict as to the ADA claim, and denying Carmona's motion for reinstatement. The district court vacated the verdict on Carmona's ADA claim because it found that he had presented insufficient evidence that he was an "individual with a disability" or that he had been discriminated against "because of" his disability. The district court rejected Southwest's argument that Carmona had failed to produce substantial evidence that he was "qualified" for his job within the meaning of the ADA. Final judgment

---

[1] Section 12102 states in relevant part:
  "As used in this chapter:
    . . .
    **(2) Disability**
      The term 'disability' means, with respect to an individual—
            **(A)** a physical or mental impairment that substantially limits
        one or more of the major life activities of such individual;
            **(B)** a record of such an impairment; or
            **(C)** being regarded as having such an impairment." 42 U.S.C.A.
  § 12102 (2005) (emphasis in original).

[2] Section 12112 states in relevant part:
"**(a) General Rule**
    No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112 (2005) (emphasis in original).

that he take nothing by his suit was issued on October 20, 2008. Carmona timely filed notice of appeal on November 14, 2008.

## DISCUSSION

On appeal, Carmona argues that the district court erred in granting judgment as a matter of law to Southwest on his ADA claim. He argues that, should we agree that the district court erred in overturning the jury verdict, we must also find that the district court erred by failing to reinstate him. He also argues that the district court erred in failing to grant a continuance so that Ilgen could be compelled to testify. Southwest disputes each of Carmona's assignments of error. Furthermore, although Southwest argues that the district court's judgment as a matter of law was correct, Southwest contends that the district court erred in its analysis of this issue by finding that Carmona had presented sufficient evidence for a reasonable jury to find that he was "qualified" for his job within the meaning of the ADA.

## I.  Judgment as a Matter of Law on Carmona's ADA Claim

In order to hold Southwest liable for discrimination under the ADA, Carmona needed to establish (1) that he was an "individual with a disability" within the meaning of the ADA, (2) that he was a "qualified individual" for his job, despite his disability, and (3) that he was discharged "because of" his disability. *See* 42 U.S.C.A. §§ 12102, 12112 (2005). In order to survive a motion for judgment as a matter of law, he needed to produce enough evidence in support of each of these elements to allow a reasonable jury to find in his favor. *See, e.g.*, *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 730 (5th Cir. 2007).

### A.  Standard of Review

We review a district court's ruling on a motion for judgment as a matter of law *de novo*. *E.g.*, *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622

9

(5th Cir. 2009). We examine all of the evidence in the record as a whole, including evidence that does not support the non-moving party's case. *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 805-06 (5th Cir. 1996). However, we must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 574 (5th Cir. 2003); *Farpella-Crosby*, 97 F.3d at 805-06. We do not assess the credibility of the witnesses or weigh the evidence. *Palasota*, 342 F.3d at 574.

Judgment as a matter of law is appropriate where there is no legally sufficient evidence upon which the jury could find for a party on its claim. *E.g.*, *Hagan*, 529 F.3d at 622. There is no legally sufficient evidence upon which a jury could find for a party where the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict. *See, e.g.*, *Burch v. Coca-Cola*, 119 F.3d 305, 313 (5th Cir. 1997); *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc).

## B. "Individual with a Disability"

Carmona needed to establish that he was an "individual with a disability" within the meaning of the ADA in order to qualify for protection under its provisions. *See* 42 U.S.C.A. § 12112(a) (2005). In order to establish that he had a disability, Carmona needed to show that he had:

> "**(A)** a physical or mental impairment that substantially limit[ed] one or more . . . major life activities . . . ;
> **(B)** a record of such an impairment; or
> **(C)** [was] regarded as having such an impairment." *See* 42 U.S.C.A. § 12102(2) (2005) (emphasis in original).

The United States Supreme Court adopted a strict interpretation of this definition in the cases of *Sutton v. United Airlines, Inc.* and *Toyota Motor*

*Manufacturing, Kentucky , Inc. v. Williams*.  *Sutton*, 119 S.Ct. 2139 (1999), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553; *Williams*, 122 S.Ct. 681 (2002), *superseded by statute*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.  In *Sutton*, the Court held that the mitigating effects of medications had to be taken into account in determining whether or not a person was "substantially limited" in performing a major life activity.  *Sutton*, 119 S.Ct. at 2146.  In *Williams*, the Court held that the phrase "substantially limited" precluded impairments that interfered with major life activities in only minor ways from qualifying as "disabilities" under the ADA.  *Williams*, 122 S.Ct. at 691.  *Williams* also noted that major life activities are those activities which are of central importance to daily life, such as walking, seeing, and hearing.  *Id*.

The district court found that, although Carmona had presented sufficient evidence that he had an impairment that affected his major life activities of sleeping, standing, and walking, he had not presented sufficient evidence that this impairment was substantially limiting.  The district court reached its conclusion in part because it found that our holding in *Waldrip v. General Electric Co.*, 325 F.3d 652 (5th Cir. 2003), controlled Carmona's case.  The district court interpreted *Waldrip* as standing for the proposition that impairments that cause temporary, intermittent limitations of major life activities are not substantially limiting as a matter of law.

Shortly before Carmona's case went to trial, Congress amended the ADA in order to correct what it viewed as an overly restrictive interpretation of the statute's terms that had been adopted by the Supreme Court in *Sutton* and *Williams*.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.  These amendments would be very favorable to Carmona's case if

11

they are applicable, because they make it easier for a plaintiff with an episodic condition like Carmona's to establish that he is an "individual with a disability." *See id*. Carmona argued unsuccessfully in the district court that the district court needed to interpret the ADA's definition of "disability" in light of the meaning adopted by these amendments.

On appeal, Carmona again contends that we must interpret the terms of the ADA in light of the meaning adopted by the ADA Amendments Act of 2008 (ADAAA). He also argues that, even if we decline to interpret the ADA in light of these amendments, he presented sufficient evidence for a reasonable jury to find that he was an "individual with a disability" under the old standards established by *Sutton* and *Williams*.

We begin our analysis by addressing Carmona's argument that we should interpret the ADA's definition of "disability" in light of the recent amendments. We have already addressed this issue generally. In *EEOC v. Agro Distribution, LLC*, we stated that the ADAAA did not apply retroactively. 555 F.3d 462, 469 n.8 (5th Cir. 2009). Carmona contends in his brief that he is not arguing for retroactive application of the amendments. Instead, he argues that Supreme Court precedent establishes that "[s]ubsequent legislation declaring the intent of an earlier law is entitled to great weight when it comes to statutory construction," citing *NLRB v. Bell Aerospace Co.*, *Red Lion Broadcasting Co. v. FCC*, and *Glidden v. Zdanok* for support. *Bell Aerospace Co.*, 94 S.Ct. 1757 (1974), *overruled on other grounds by NLRB v. Hendricks County Rural Elec. Membership Corp.*, 102 S.Ct. 216 (1981); *Red Lion Broadcasting Co.*, 89 S.Ct. 1794 (1969); *Glidden*, 82 S.Ct. 1459 (1962). These cases are not on point. In *Bell Aerospace* and *Red Lion Broadcasting*, the meaning of the statutes at issue before the Supreme Court

had not been definitively established by the Court in any of its prior opinions. *See Bell Aerospace Co.*, 94 S.Ct. at 1768; *Red Lion Broadcasting Co.*, 89 S.Ct. at 1802. Thus, the "subsequent legislation" at issue in these cases did not involve a Congressional overturning of settled Supreme Court precedent. Each case involved a situation in which the Court examined a statute and established its definitive interpretation for the first time.

In *Glidden*, the Eighty-third and Eighty-fifth Congresses had passed legislation that disagreed with a line of Supreme Court cases that had held that earlier Congresses had not established the United States Court of Customs and Patent Appeals or the United States Court of Claims as Article III courts. *Glidden*, 82 S.Ct. at 1463. In reviewing the Eighty-third and Eighty-fifth Congresses' legislation, the Supreme Court stated that, in judging for itself whether or not the precedent in question had been correctly decided, it was proper to give some weight to the later Congresses' interpretation of the earlier Congresses' intent in establishing the courts. *Id.* at 1468. Ultimately, however, the Supreme Court stated that it was not bound by the Eighty-third and the Eighty-fifth Congresses' interpretation, because the case involved a constitutional question. *Id.* The presence of a constitutional question gave the Court the power to invalidate the later Congresses' desired interpretation. Therefore, as in *Bell Aerospace* and *Red Lion Broadcasting*, the Court had yet to render a definitive interpretation of the statute at issue in *Glidden* when it decided to give some weight to the later Congresses' interpretation.

Carmona's case is different, because the Supreme Court established the definitive interpretation of the ADA's definition of "disability" in *Sutton* and *Williams*. This interpretation was later partially overruled by the ADAAA,

but until the ADAAA went into effect, all lower courts remained bound by the Supreme Court's settled interpretation. The effective date of the ADAAA was January 1, 2009. This case was filed, tried, and decided before then. Therefore, in order for us to depart from the Supreme Court's settled interpretation, we would need to find that Congress intended the ADAAA to apply retroactively. We have already declined to do that. *See Agro Distribution, LLC*, 555 F.3d at 469 n.8. Accordingly, we must apply the Supreme Court's pre-ADAAA definition of "disability."

Carmona only claims to have established that he was an "individual with a disability" under Prong (A) of the ADA's definition of "disability." *See* 42 U.S.C.A. §§ 12102(2). Specifically, he asserts that he submitted sufficient evidence for a reasonable jury to find that his psoriasis and his psoriatic arthritis substantially limited his major life activities of sleeping, walking, and standing. We do not address Carmona's arguments that he presented sufficient evidence that he was substantially limited in the major life activities of sleeping and standing, because we find that he presented sufficient evidence that he was substantially limited in the major life activity of walking.

Carmona testified that his psoriatic arthritis made him unable to walk when it flared-up. He stated that, "when that happens I just stay immobile . . . wherever I am. Or if I do move, I crawl around . . . it's quite painful." He testified that these flare-ups could occur as often as twice in the same week. This testimony was corroborated by documents entered into evidence by both Carmona and Southwest that contained medical evaluations of Carmona's condition that were made and signed by Carmona's physician, Dr. Tom Roark (Roark). In these documents, Roark stated that Carmona needed to be granted intermittent FMLA leave, because he would be "incapacitated" three

to four times every month for three to four days at a time.

The district court found that this evidence was insufficient to establish that Carmona was substantially limited in the major life activity of walking for both factual and legal reasons. Southwest echoes these arguments on appeal. We will examine the factual reasons first.

The district court reasoned that Carmona had undermined his own factual evidence of disability by testifying that (1) he had not declared himself disabled when he applied to work for Southwest in 1991, (2) his symptoms were mostly on his skin, (3) his symptoms were eased by medication, (4) he was able to ride his bike, shop, cook, walk, stand, and perform other tasks, and (5) after his termination, he went to work for Jet Blue and Dillard's without missing any scheduled work. We must view the evidence in the light most favorable to Carmona while evaluating these arguments. *See Palasota*, 342 F.3d at 574.

Arguments (1) and (2) are flawed, because they fail to distinguish between Carmona's psoriasis and his psoriatic arthritis. Carmona never alleged that his psoriasis impaired his ability to walk. Carmona had psoriasis when he went to work for Southwest in 1991, but he did not develop psoriatic arthritis until 1998. Therefore, there was no reason for him to disclose that he was disabled when he applied for his job with Southwest in 1991. Similarly, when Carmona testified that his symptoms of psoriasis were "mostly on the skin," he was describing the symptoms of his psoriasis, not his psoriatic arthritis.

As to Argument (3), it does not necessarily follow from the fact that Carmona's symptoms were "eased" by taking medication that he was no longer substantially limited in his ability to walk. The jury rationally could have concluded that, even with his medication, Carmona was still

15

substantially limited in his ability to walk during the flare-ups of his psoriatic arthritis. *See EEOC v. Phillips Chem. Co.*, 570 F.3d 606, 620 (5th Cir. 2009) ("Individuals who take medication or use corrective devices to lessen an impairment but still remain substantially limited as to one or more major life activities are still disabled under the ADA.")

Argument (4) is the product of selective quotation. In its opinion, the district court stated that "Mr. Carmona testified he was able to live by himself without assistance, take care of himself, read, drive, ride his bike, shop, cook, walk, and stand, most of the time." Southwest took this a step further in its brief, omitting "most of the time" and stating that "[Carmona] is able to drive, read, ride his bike, go shopping, and cook, and lives by himself and is able to care for himself." Carmona's actual testimony was that:

> " Q. [By Counsel for Southwest] Do you still live by yourself?
> A. [By Carmona] Yes, I do.
> Q. And you were able to take care of yourself, correct?
> A. *For the most part*, yes.
> Q. You were able to read, to drive, to ride your bike, and shop and cook?
> A. *On good days*, yes, ma'am.
> Q. And most of the time, you're able to walk and stand, correct?
> A. *On good days*, yes, ma'am." (Emphasis added.)

Every one of Carmona's responses was qualified in a manner that was consistent with the rest of his testimony. Nothing in this testimony refuted his claim that his periodic flare-ups of psoriatic arthritis substantially limited his ability to walk.

Argument (5), that Carmona's evidence of disability was undermined by his admission that he had not missed any work because of his condition while he was employed by Jet Blue or Dillard's, has more merit. It seems strange that an employee who was medically excused from work for up to fifteen days

16

a month at one job would have a perfect attendance record at his next job. However, Carmona's jobs at Jet Blue and Dillard's could reasonably be found materially different in presently relevant respects from his job at Southwest. At Dillard's, Carmona's job was performed entirely while seated at a desk. Although Carmona testified that sitting aggravated his condition, he never contended that his psoriatic arthritis substantially limited his ability to sit. Thus, the jury reasonably could have concluded that he was able to work this job during his flare-ups, even if getting to and from the job was extremely painful. At Jet Blue, Carmona worked part-time as a customer service agent, which required him to stand behind a desk, meet flights on the jet way, and check baggage. Although this job required him to stand, it involved minimal amounts of walking. Jet Blue did not allow him to work this job for more than twelve hours a week. Under these facts, and mindful of the rule that we must view them in the light most favorable to Carmona, we find that the jury rationally could have concluded that Carmona was able to work for Jet Blue despite being substantially limited in his ability to walk, because he could tolerate the pain long enough to make it through a part-time day as a customer service agent.

The district court and Southwest also argue that Carmona failed to produce sufficient evidence to establish that he was disabled as a matter of law, because our case law holds that intermittent flare-ups cannot be considered substantially limiting. The case cited for this proposition by both Southwest and the district court is *Waldrip*. 325 F.3d at 652. However, *Waldrip* involved a situation in which the plaintiff's doctor testified that, "*at most*, he *occasionally* must miss a few days of work when his chronic pancreatitis flares up." *Id*. at 657 (emphasis added). The occasional flare-ups in *Waldrip* and the frequent, recurrent flare-ups that Carmona experiences

17

are substantially different situations, though both could be described as "intermittent." In *Waldrip*, the plaintiff's occasional flare-ups did not substantially limit any of his major life activities, because they were so few and far between. *See id.* Carmona spends anywhere from about one-third to about one-half of each month unable to walk without excruciating pain. It would be difficult to argue that this does not substantially limit his ability to walk.

The combination of Carmona's testimony and the medical records (including Dr. Roark's opinion as to Carmona's impaired ability to walk) submitted with his application for FMLA certification provided sufficient evidence for a reasonable jury to find that Carmona was an "individual with a disability" within the meaning of the ADA, because it allowed a reasonable jury to conclude that he had an impairment, psoriatic arthritis, that substantially limited his major life activity of walking. The district court erred in holding otherwise.

### C. "Qualified Individual"

In addition to establishing that he was an "individual with a disability," Carmona needed to establish that he was "qualified" for his job within the meaning of the ADA. *See* 42 U.S.C.A. § 12112(a) (2005). The ADA defines a "Qualified individual with a disability" as:

> "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C.A. § 12111(8) (2005).

18

Southwest argues that Carmona could not have established that he was qualified for his job because precedent from our Circuit holds that regular attendance is a necessary qualification for most jobs, and Carmona's disability prevented him from attending his job regularly. *See generally Smith v. Lattimore Materials Co.*, 287 F. Supp. 2d 667, 672 (E.D. Tex.), *aff'd*, 77 F. App'x 729 (5th Cir. 2003) ("Reporting on time and regular attendance is an essential function of any job.").

The district court disagreed with Southwest, finding that the evidence introduced at trial was sufficient to allow a reasonable jury to conclude that flight attendants' schedules at Southwest were extremely flexible. Therefore, the district court reasoned that, while regular attendance might be a requirement of most jobs, it was not a requirement of Carmona's position at Southwest.

We are sympathetic to the argument that Carmona was not qualified to be a flight attendant at Southwest because his disability prevented him from showing up for work on scheduled days. Although the evidence showed that Southwest's flight attendants have nearly unlimited discretion in determining when and how often they want to work, it did not show that they may skip the days they have scheduled at will.

However, we do not think that Southwest can establish that it was unreasonable for the jury to find that Carmona was qualified for his job. There is no dispute that Carmona was able to perform the essential functions of his job as a flight attendant when he showed up to work. The dispute is over whether or not his irregular attendance made him unqualified. Even if

19

we assume that attendance was an essential function of Carmona's job,[3]

---

[3] We note that there is some basis on this record to contest this assumption. Southwest's decision to grant Carmona intermittent FMLA leave, despite the fact that he was frequently unable to give Southwest notice of his absences in advance, and without transferring him to a different position in the company, suggests that attendance was not in fact an essential requirement of his job. Leave under the FMLA can either be intermittent or continuous. *See* 29 U.S.C.A. § 2612 (West 2009). Employees generally become entitled to FMLA leave when they are no longer able to perform the essential functions of their jobs. *See id.* at § 2612(a)(1). However, an employee is not entitled to intermittent leave if he cannot perform the essential functions of his job when he is present. *Hatchett v. Philander Smith College*, 251 F.3d 670, 676 (8th Cir. 2001). Because the FMLA is designed to excuse employees from work, an awkward situation arises, legally speaking, when an employee seeks intermittent leave from a job where attendance is essential. On the one hand, the FMLA is designed to excuse attendance requirements. On the other hand, if the employee cannot attend a job where his attendance is vital, he cannot perform one of the essential functions of his job, and a heavy burden is placed on his employer if it must grant him intermittent leave.

This tension led Congress to soften the FMLA's impact where employees seek intermittent leave. The language of the statute and the regulations promulgated by the Secretary of Labor provide that an employer may transfer an employee who seeks intermittent leave from a job where attendance is vital to an equivalent position where the employee's periodic absences will be less burdensome. 29 U.S.C.A. § 2612(b)(2); 29 C.F.R. § 825.204 (1997). This tension has also caused courts to interpret the FMLA narrowly where an employee requests the ability to take intermittent leave without notice. The Seventh and Eighth Circuits have stated that "the FMLA does not provide an employee . . . with a right to 'unscheduled and unpredictable, but cumulatively substantial, absences' or a right to 'take unscheduled leave at a moment's notice for the rest of her career.'" *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 853 (8th Cir. 2002) (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007–08 (7th Cir. 2001). *See also* S. Elizabeth Wilborn Malloy, *The Interaction of the ADA, the FMLA, and Workers' Compensation: Why Can't We Be Friends?*, 41 Brandeis L.J. 821, 837 (2003). At least one district court in this circuit has also applied this rule. *Henson v. Bell Helicopter Textron, Inc.*, No. Civ.A.4:01-CV-1024-Y, 2004 WL 238063, at *11 (N.D. Tex. Feb. 6, 2004).

Therefore, while the FMLA can excuse an employee from his employer's ordinary attendance requirements, it does not do so where the employee requests the right to take intermittent leave without notice indefinitely. The FMLA also does not prevent the employee from being transferred to a different job with equivalent pay and benefits where his periodic absences will do less damage to the business. Carmona requested the ability to take intermittent leave without notice indefinitely. Southwest not only granted him this leave for seven years, it also decided not to transfer him to another position. Accordingly, it arguably would have been reasonable for the jury to conclude from Southwest's lack of resistance that attendance was not in fact an essential requirement of his job. However, we need not go this far in our analysis, as Southwest cannot prevail even if we assume that attendance was an essential requirement of Carmona's job.

Southwest's own measure of whether or not a flight attendant's attendance was adequate was its attendance policy, which was extremely lenient. Carmona managed to stay within the bounds of this policy for seven years, despite his irregular attendance, and despite his disability. Therefore, we do not think that his disability made him unqualified for his job, even though it often caused him to miss work.

Southwest also contends that Carmona's violation of the attendance policy in June 2005 made him unqualified for his job. We disagree with this contention as well. The fact that Carmona's supervisors determined that he had exceeded twelve points was evidence that his attendance was inadequate and thus that he was unqualified for his job. But, as we discuss in detail below, Carmona introduced evidence that other flight attendants who had also exceeded twelve points were not discharged. Based on this evidence, the jury reasonably could have concluded that Carmona's attendance, although inadequate under Southwest's written policy, would have been deemed adequate under the unwritten policy that was actually in effect, had he not been discriminated against for being disabled. Therefore, even if the jury concluded that Carmona had violated Southwest's written attendance policy, it could have reasonably found that he was nevertheless qualified for his job under the unwritten policy that was actually in effect.

Accordingly, we hold that the jury reasonably could have found that Carmona was a "qualified person with a disability" within the meaning of the ADA.

### D.  Discriminated Against "Because of" His Disability

The final element Carmona needed to establish in order to prevail on his ADA claim was that Southwest discriminated against him "because of" his disability when it terminated him. *See* 42 U.S.C.A. § 12112(a) (2005).  Once

21

an employer has produced sufficient evidence to support a nondiscriminatory explanation for its decision to terminate an employee, the employee may "establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 120 S.Ct. 2097, 2106 (2000) (quoting *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1095 (1981)).  "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 120 S.Ct. at 2108 (emphasis in original).

Southwest asserted at trial that it had fired Carmona for violating its attendance policy.  Carmona introduced evidence in the form of documents and testimony that five other flight attendants had reached or exceeded twelve attendance points without being terminated.  Southwest admitted that all five of these flight attendants were female, but their identities were not disclosed.  The district court admitted portions of their attendance records in Plaintiff's Exhibits 4 through 9.  Plaintiff's Exhibits 7 and 8 were taken from the same employee's record.  Because the names of these employees were withheld, we will refer to each by the number of the exhibit that contained her employment records.

Southwest argues on appeal, as it argued at trial, that none of these employees' situations were similar to Carmona's.  Clark testified that Employees 4, 5, and 9 were not terminated, even though they reached or exceeded twelve attendance points, because they were not timely issued one or more of the warning letters that had to be issued before termination could occur under the Agreement between Southwest and its flight attendants.  However, as Carmona's attorney noted at trial, and as Carmona argues now, the memoranda found in Plaintiff's Exhibits 4, 5, and 9 all state that these

employees "were issued *all* letters of discipline timely." (Emphasis added.) Clark attempted to resolve this apparent discrepancy by testifying that these statements indicated that the employees in question had been issued timely all letters of discipline up to, but not including, their termination letters. While this explanation may be plausible, the jury was not required to believe it. The explicit, unqualified statement contained in each memorandum that all letters of discipline had been issued timely provided grounds for a reasonable jury to reject Clark's testimony that the statements were implicitly qualified. In conducting a review for the sufficiency of the evidence, we accept all credibility choices made by the jury. *Goodman v. Harris County*, 571 F.3d 388, 398 (5th Cir. 2009), *pet. denied*, ___ S.Ct. ___, 2010 WL 154980, ___ S.Ct. ___, 2010 WL 154983 (2010). Accordingly, although the issue is indeed a close one, we ultimately conclude that Carmona's jury reasonably could have found that Southwest had allowed other flight attendants to exceed twelve points without being terminated.

Southwest also argues that the female employees whose records were introduced in Plaintiff's Exhibits 4 through 9 were not proper comparators for the purpose of establishing discrimination, because Carmona did not offer any proof that these women were individuals *without* disabilities. The logic behind this argument is that if these women were also disabled, but allowed to keep their jobs, then no reasonable jury could have inferred that Carmona's disability was a motivating factor in his discharge. Carmona argues that the jury was entitled to assume Employees 4 through 9 were not disabled, because no evidence suggested that they were disabled, and most individuals are not disabled.

We agree that Southwest's argument on this issue is without merit. It is generally recognized that a party has the burden of proof on an issue when

the facts with regard to the issue lie peculiarly within the knowledge of that party. *McCormick on Evidence* 950 (3d ed., Edward W. Cleary ed.,1984). Another relevant principle is that the risk of failure of proof may properly fall upon the party who contends that the more unusual event has occurred. *Id.* In this case, Southwest withheld all information about Employees 4 through 9 except for their sex.  There is no doubt that most people are not individuals with disabilities.  Therefore, if Southwest knew that one or more of Employees 4 through 9 was disabled, it bore the burden of coming forward with that information at trial.  Indeed, it seems strange that Southwest would not have introduced evidence that one or more of these employees was disabled, if it were true, given the detrimental effect this information would have had on Carmona's case.  Therefore, we find that the jury was entitled to assume, based on the absence of proof to the contrary and the probabilities of the situation, that the employees represented by Exhibits 4 through 9 were not disabled.

Moreover, some of Carmona's trial evidence supported an inference that his disability-related absences irritated his supervisors.  Clark characterized Carmona's attendance record between 2003 and 2005 as "one of the worst ones that we had," noting that "roughly 40 percent of the time that's represented on the calendar is sick time."  However, Clark admitted that the vast majority of these absences could not be counted against Carmona because of his intermittent FMLA leave and his doctors' notes.  Michael Mankin, Clark's superior, testified that Carmona's attendance was "extremely poor."  All things considered, a reasonable jury could properly infer that, when Carmona's record eventually indicated that he had exceeded twelve points, his supervisors jumped at the chance to terminate him and did everything they could to ensure that his points would still exceed twelve after

24

his pre-termination review, even though leniency had been granted to similarly-situated employees who were not disabled.  Though, as stated, the issue is a close one, we ultimately conclude that a reasonable jury could have found Southwest's proffered explanation for Carmona's discharge was false and that the true reason was his disability.

### E.  Conclusion

A reasonable jury could have concluded, based on the evidence in this case, that Carmona was an "individual with a disability" within the meaning of the ADA, that he was "qualified" for his position within the meaning of the ADA, and that he was terminated "because of" his disability.  *See* 42 U.S.C.A. §§ 12102, 12111, 12112 (2005).  Therefore, we hold that the district court erred in granting judgment as a matter of law to Southwest.

## II.  Reinstatement

Carmona argues that if the district court erred in granting judgment as a matter of law to Southwest, then it also erred in denying his motion for reinstatement.  We review a district court's determination of whether or not to grant reinstatement for abuse of discretion.  *Brunneman v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).

The ADA adopts the remedies set forth in Title VII.  *See* 42 U.S.C. § 12117 (2005) ("The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies and procedures this subchapter provides to . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter . . . .").  Title VII states in part that, "If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to,

25

reinstatement . . . ."  42 U.S.C. § 2000e–5(g)(1) (2003).  We have held that the decision of whether or not to grant reinstatement is within the discretion of the district court and that a court may properly consider factors such as the availability of positions, the plaintiff's current employment status, and the impact reinstatement would have on employee relations in making its decision.  *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254-55 (5th Cir. 1995).

Southwest argues that the district court did not make the decision to deny Carmona's motion for reinstatement independently of its decision to grant judgment as a matter of law to Southwest.  Southwest notes that it did not even have time to respond to Carmona's motion for reinstatement before the district court ruled on it.  Therefore, Southwest argues that we should remand the issue of reinstatement to the district court if we determine that the district court erred in granting judgment as a matter of law to Southwest, so that the district court may fully examine the issue and the relevant factors.

The district court addressed the issue of reinstatement in a single sentence: "After consideration of the Defendant's motion and renewed motion for judgment as a matter of law and in light of the evidence adduced at trial, the Court declines to exercise its equitable jurisdiction to reinstate Mr. Carmona."  The district court made no factual findings regarding the feasibility of reinstating Carmona that could support its order denying reinstatement independently of its decision to grant judgment as a matter of law to Southwest.  We agree with Southwest that the district court's order denying reinstatement should be vacated and this issue should be remanded to the district court for reconsideration in light of our holding that it was

error to grant Southwest's motion for judgment as a matter of law.[4]

## CONCLUSION

For the foregoing reasons, we reverse the portion of the district court's order granting Southwest's motion for judgment as a matter of law, vacate the portion of the district court's order denying Carmona's motion for reinstatement, and remand the case with instructions that judgment be entered for Carmona in accordance with the jury's verdict and that Carmona's motion for reinstatement be reconsidered in light of our holding.

REVERSED in part, VACATED in part, and REMANDED.

---

[4] Carmona's final assignment of error is that the district court erred in refusing to grant him a continuance so that he could obtain the testimony of Ilgen. We decline to reach this issue, because we hold that the district court erred in granting Southwest's motion for judgment as a matter of law.