# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2013

No. 12-60327
Summary Calendar

Lyle W. Cayce
Clerk

TERRY E. TYLER,

Plaintiff-Appellant,

v.

LA-Z-BOY CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
Case No. 3:09-CV-688

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellee La-Z-Boy Corp. laid off Plaintiff-Appellant Terry Tyler as part of a reduction in force. Tyler alleged that La-Z-Boy discriminated against him on the basis of age and disability. The district court granted summary judgment for La-Z-Boy. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60327

## 1. Facts and Proceedings

Terry Tyler injured his shoulder working as an upholsterer at Defendant-Appellee La-Z-Boy Corp.'s ("La-Z-Boy") Newton, Mississippi furniture manufacturing plant in March 2005. Tyler had shoulder surgery, and was off work for nineteen months.

Tyler returned to work in October 2006 with lifting restrictions—no more than twenty pounds occasionally and ten pounds frequently—that prevented him from assuming his old job. Instead, La-Z-Boy assigned him to an upholstery training position during the plant's second shift. Tyler took time off to have additional shoulder surgery in June 2007, but returned to the upholstery training job in March 2008. His lifting restrictions—no more than twenty-four pounds from floor to waist or twenty pounds from waist to overhead—remained largely the same.

As Tyler grappled with his shoulder injury, La-Z-Boy grappled with difficulties of its own. The company began laying off employees in January 2007, citing a drop in sales caused by a switch to a new manufacturing system, along with the economic downturn. The workforce at La-Z-Boy's Newton plant plummeted from more than 1,100 employees in 2007 to fewer than 700 by the end of 2008. The upholstery department accounted for almost half of the jobs lost.

As part of the layoffs, La-Z-Boy eliminated the upholstery department's second and third shifts. Eleven of the plant's fifteen upholstery trainers retained positions with the company: the three on the first shift with the most seniority stayed on as trainers; three quit or were let go for performance-related reasons; and eight were assigned to "floater" upholstery positions.[1] La-Z-Boy determined that "[a]ll of the floater jobs required lifting more weight than was permitted by

---

[1] A "floater" is a person with skills sufficient to "be a body and a seat upholsterer" or "a framer and an assembler."

2

No. 12-60327

Tyler's lifting restrictions." With "no production jobs available that could accommodate his lifting restrictions," La-Z-Boy laid off Tyler on October 16, 2008. A La-Z-Boy human resources manager told Tyler that the company was laying him off because of his "limitations due to [his] injury" and because "there was no other position for [him]."[2] At the time, Tyler was forty-six years-old, and had worked at the Newton plant since 1997.

Tyler filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2008, alleging that La-Z-Boy discriminated against him on the basis of age and disability. The EEOC issued a "Right to Sue" letter, and Tyler filed suit in district court on the same grounds.

The district court granted summary judgment for Tyler on both claims. The district court found that Tyler's shoulder injury did not qualify him as disabled under the Americans with Disabilities Act ("ADA"); that Tyler's lifting restrictions were insufficient to show that he was "substantially limited" from working or performing any other major life activity; and that La-Z-Boy did not regard Tyler as disabled. The district court also found that Tyler could not rebut La-Z-Boy's legitimate, nondiscriminatory reasons for laying him off—namely the reduction in force and his lack of seniority—and that Tyler did not produce evidence that La-Z-Boy terminated him because of his age under the Age Discrimination in Employment Act ("ADEA"). Tyler appeals the district court's ruling as to both his age and disability.[3]

---

[2] La-Z-Boy has not hired new trainers since eliminating Tyler's position.

[3] Tyler also alleges that the district court erred in granting summary judgment because of La-Z-Boy's discovery abuses. However, as La-Z-Boy observes, Tyler does not identify a specific discovery ruling by the district court that resulted in reversible error. As this court observed in *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987), appealing a district court's discovery rulings "without even the slightest identification of any error in [the district court's] legal analysis or its application to [the case], is the same as if [a party] had not appealed that judgment." Even if we did find that Tyler identified a specific discovery ruling to challenge, his discovery challenge is not persuasive because a "[p]arty may not simply rely on vague assertions that additional discovery will produce

No. 12-60327

2. Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Condrey v. Sun Trust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).

3. Tyler's Disability Discrimination Claim

"The ADA, 42 U.S.C. §§ 12102 *et seq.*, prohibits discrimination in employment against a qualified individual on the basis of his disability."[4] *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011). "To prevail on an ADA claim, a plaintiff must prove that 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1997). "'As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability.'" *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996)). Under the ADA, a "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). A party is "regarded as having such an impairment" if the party can show that the party's employer "'entertain[ed] misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so

---

needed, but unspecified, facts in opposition to summary judgment." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

[4] The version of the ADA in effect in 2008, and not the amendments that took effect in 2009, controls whether Tyler was disabled because the layoffs took place in 2008, and the amendments are not retroactive. *See E.E.O.C. v. Argo Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

limiting." *Kemp v. Holder*, 610 F.3d 231, 237 (5th Cir. 2010) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)).

Here, the district court did not err in granting summary judgment for La-Z-Boy on the grounds that Tyler's weight-lifting restrictions did not establish that he had a disability under the ADA, or that there was a record of such impairment, because our precedent forecloses finding that such restrictions amount to a disability. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (*per curiam*). In *Sherrod*, 132 F.3d at 1120, this court found that a back injury that prevented a flight attendant from lifting forty-five pounds occasionally and twenty pounds frequently did not amount to "a substantial limitation in the major life activities of lifting and working" because she was only "limited from *heavy* lifting, not the routine duties of daily living."  In *Ray*, 85 F.3d at 229, this court found that a disorder that prevented a worker from lifting more than five to ten pounds did not substantially limit a major life activity because the worker could "lift and reach as long as he avoids heavy lifting."  Because the facts in *Ray* and *Sherrod* mirror those in this case, and because Tyler does not distinguish either case, we find that Tyler's lifting restrictions of twenty-four pounds from floor to waist and twenty pounds from waist to overhead do not qualify as a disability under the ADA.

The district court also did not err in granting summary judgment on the grounds that La-Z-Boy did not regard Tyler as disabled because Tyler did not introduce evidence that La-Z-Boy "entertained misperceptions" regarding his physical abilities.  Tyler argues that a La-Z-Boy manager's reference to his "limitations" amounts to animus directed toward Tyler.  However, the manager's statement—that Tyler "was terminated because of [his] limitations due to [his] injury" and that "there was no other position for [him]"—merely confirms that La-Z-Boy believed it did not have any available vacant position that could

No. 12-60327

accommodate Tyler's lifting restriction. Tyler relies on *Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 861 (5th Cir. 2010), in which this court found that the employer's explanation for firing an employee—that he violated an attendance policy—was "unworthy of credence" because the employer had not fired other employees who violated the policy. Unlike the employer in *Carmona*, La-Z-Boy's reasons for laying off Tyler are worthy of credence. First, unlike in *Carmona*, in which a single employee was fired, Tyler was one of hundreds employees laid off by La-Z-Boy. Second, unlike in *Carmona*, in which an employer treated its employees arbitrarily, La-Z-Boy applied a neutral criterion—seniority[5]—when deciding which employees to retain as trainers. In addition, unlike in *E.E.O.C. v. E.I. Du Pont de Nemours & Co.,* 480 F.3d 724, 727-29 (5th Cir. 2007), a case cited by Tyler in which this court found that an employer regarded as disabled an employee who was unable to stand for more than ten minutes and walk for more than 100 feet without resting, Tyler's lifting restrictions are not as severe a physical limitation.[6]

In sum, the district court did not err in granting summary judgment on Tyler's disability claim because Tyler's weight-lifting restriction did not amount to a disability under the ADA.

---

[5] La-Z-Boy's use of seniority to determine layoffs was consistent with its employee handbook, which provides: "Employees shall be laid off in inverse order of seniority" within the classification being reduced." La-Z-Boy hired the three retained trainers in 1981, 1987, and 1996, whereas the company hired Tyler in 1997.

[6] Tyler also argues that the district court erred in applying the "circumstantial evidence" framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as opposed to the "direct evidence" framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Specifically, Tyler contends that he introduced direct evidence of discrimination: the statement by a La-Z-Boy human resources manager that, because of Tyler's "limitations," there "was nothing in the La-Z-Boy Plants that Tyler could do." Because we find that the weight-lifting restrictions do not amount to a disability, we do not address whether the district court's alleged application of the *McDonnell Douglas* framework in the context of its disability analysis was in error.

4. Tyler's Age Discrimination Claim

Under the ADEA, an employer cannot "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308-09 (5th Cir. 2004). In a reduction-in-force case, a party makes out a *prima facie* case of age discrimination by showing "(1) that he is within the protected age group;[7] (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir.1991)). Although a *prima facie* case "is fairly easily made out," *Amburgey*, 936 F.2d at 812, "what creates the presumption of discrimination is . . . the discharge coupled with the retention of younger employees." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 644 (5th Cir. 1985). A party that establishes a *prima facie* case "raises an inference of unlawful discrimination." *Nichols*, 81 F.3d at 41. "The burden of production then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action. The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993)) (citation omitted). "If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the

---

[7] ADEA coverage extends to individuals at least forty-years-old. 29 U.S.C. § 631(a); *see Rachid*, 376 F.3d at 309.

issue of intentional discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Here, the district court did not err in granting summary judgment for La-Z-Boy on Tyler's age discrimination claim because, even if we assume that Tyler established a *prima facie* case, he did not rebut La-Z-Boy's legitimate, nondiscriminatory reasons for his termination. La-Z-Boy's reasons for laying off hundred of employees, including Tyler, in response to business conditions are presumptively legitimate and nondiscriminatory because a reduction in force "is itself a legitimate, nondiscriminatory reason for discharge." *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Further, La-Z-Boy's specific reasons for laying off Tyler while retaining some employees as trainers and transferring others to "floating" upholstery positions are legitimate and nondiscriminatory because, as discussed above, La-Z-Boy acted pursuant to a neutral criterion proscribed in its employee handbook—seniority—and because Tyler's lifting restrictions prevented him from being able to assume the "floating" upholstery position.[8] Tyler has not rebutted these legitimate, nondiscriminatory reasons because he has not shown that a triable issue of fact exists as to whether La-Z-Boy intentionally laid him off "in favor of younger, clearly less qualified

---

[8] A supervisor of Tyler represented that he "was knowledgeable of other jobs that Terry Tyler could have performed." Even if we assume this to be true—Tyler does not produce evidence, and the supervisor does not state expressly, that there were jobs available that could accommodate Tyler's lifting restrictions—it does not follow that La-Z-Boy's reasons for laying off Tyler were not legitimate. Rather, as discussed above, even if there were positions open that could accommodate Tyler, a reduction-in-force itself is a legitimate, nondiscriminatory reason for laying off an employee, *see E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996), and there is no evidence that La-Z-Boy intentionally laid off Tyler "in favor of younger, clearly less qualified individuals." *Id.* Although Tyler cites the case *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276 (5th Cir. 2000) for the proposition that he "was treated less favorably than non-disabled employees in violation of the ADA and ADEA discrimination laws," the case is distinguishable because it did not involve a reduction-in-force. Rather, the court in *McInnis* found that there was a triable issue of fact as to whether an employer that fired a single employee did so because it regarded the employee as disabled. *See McInnis*, 207 F.3d at 282-84.

individuals." *Id.*; *see also Walther v. Lone Star Gas Co.,* 952 F.2d 119, 123 (5th Cir. 1992).  Tyler has not produced evidence that any new employees—let alone any new, *younger* ones—were hired as trainers following his termination.  Tyler also has not produced any evidence that the trainers retained by La-Z-Boy were "less qualified." *See Tex. Instruments*, 100 F.3d at 1181.  Although some of the trainers retained as trainers, or transferred to the "floater" positions, were younger than Tyler, more than half were age forty or older, and three were the same age as, or older than, Tyler.  As the district court correctly summarized, "Tyler has not presented any evidence to show that the reasons proffered by La-Z-Boy for his termination were not true, or that La-Z-Boy was motivated to terminate him because of his age."

In sum, the district court did not err in granting summary judgment on Tyler's age discrimination claim because, even assuming that Tyler established a *prima facie* case of discrimination, Tyler was unable to rebut La-Z-Boy's legitimate, nondiscriminatory reasons for terminating his employment.

5. Conclusion

Accordingly, we AFFIRM the summary judgment.